POWER et al.

v.

BOLES;

**Buckeye Union Insurance Company et al., Appellants;
City of Columbus, Appellee.**

[Cite as *Power v. Boles* (1996), 110 Ohio App.3d 29.]

Court of Appeals of Ohio,
Tenth District, Franklin County.

No. 95APE05–537.

Decided March 26, 1996.

30

*Wiles, Doucher, Van Buren & Boyle Co., L.P.A.*, and *Timothy P. McCarthy*, for appellants.

*Ronald J. O'Brien*, City Attorney, and *Daniel W. Drake*, Assistant City Attorney, for appellee city of Columbus.

PETREE, Presiding Judge.

Appellants, Buckeye Union Insurance Company and New Hampshire Insurance Company ("appellants"), appeal from a judgment of the Franklin County Court of Common Pleas in favor of appellee, city of Columbus ("city"). Appellants set forth the following assignment of error:

"The trial court erred in granting appellee's motion for summary judgment and finding that no duty was owed to plaintiff's decedent."

We first outline the material facts of this case. In July 1985, preparations were being made for the first annual Columbus 500 Auto Race. The state of Ohio, by and through the Ohio Department of Transportation, had contracted with Columbus Asphalt Paving Company ("Columbus Asphalt"), a private contractor, to ready the streets of Columbus for the race. In June 1985, the necessary resurfacing work on Spring Street had been completed. On July 20, 1985, Columbus city employees David Pasicka and William Pettibone were instructed by their supervisor to prepare a "punch list" indicating which water valve boxes and manhole covers on Spring Street needed to be raised or lowered in order to meet race track specifications. When Pasicka and Pettibone arrived at the site, they met John J. Power, a Columbus Asphalt employee. After a brief discussion, it was learned that Power was performing the same task for his employer and the three men agreed to perform the work jointly.

Spring Street was open to normal traffic on July 20, 1985; it was a clear and dry day. According to the affidavit and deposition testimony in the record, Pasicka, Pettibone and Power proceeded down Spring Street until they observed a water valve box or a manhole cover, whereupon all three men would enter the roadway to take the needed measurements. Pasicka placed a large level over the

manhole cover or water valve box and raised it to the level position. Power used a ruler to measure the distance from the surface of the manhole cover to the bottom of the level. Power called off the measurements to Pettibone, who stood in front of the manhole cover or water valve box recording the figures. Pettibone stated that, in addition to making these notations, he was responsible for watching the traffic and waving off approaching vehicles. None of the three men were wearing any reflective clothing, and no safety cones or signs had been placed in the roadway to alert oncoming traffic to the presence of the road workers.

At approximately 9:00 a.m., Power noticed that one of the recorded measurements deviated significantly from the specifications, and he decided to remeasure. Power reentered the roadway followed by Pasicka; Pettibone remained on the sidewalk making additional notations. As Power and Pasicka were taking the measurements, they were struck by a 1981 Chrysler New Yorker driven by Ewing T. Boles. Boles's vehicle was travelling approximately twenty-five m.p.h. when it struck Pasicka and Power. Power sustained serious injuries as a result of being struck by the vehicle; Pasicka was also seriously injured.[1]

The estate of decedent, John J. Power, pursued a wrongful death action against Boles. A third-party complaint was filed by Boles, asserting causes of action for contribution and indemnity against Columbus Asphalt, David Pasicka, William Pettibone and the city. In September 1987, Boles's insurers, appellants, New Hampshire Insurance Company and Buckeye Union Insurance Company, settled the claims of the estate against their insured in the sum of $850,000. By order of the court dated January 20, 1989, appellants were subsequently substituted as third-party plaintiffs to pursue their claims against the city.[2]

On September 23, 1994, the city filed a motion for summary judgment, which was granted by the trial court in a decision and judgment entry dated April 7, 1995. Appellants appeal to this court from the judgment of the Franklin County Court of Common Pleas.

Under Civ.R. 56(C), summary judgment is proper when (1) no genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party. *Welco Industries, Inc. v. Applied*

---

1. In November 1987, John J. Power died. The executor of his estate was subsequently substituted as a party plaintiff, pursuant to Civ.R. 25.

2. The claims against Pasicka and Pettibone were subsequently dismissed with prejudice.

*Cos.* (1993), 67 Ohio St.3d 344, 617 N.E.2d 1129. Where a plaintiff fails to produce evidence supporting the essential elements of his claim, summary judgment in favor of defendant is appropriate. *Id.;* see, also, *Leibreich v. A.J. Refrigeration, Inc.* (1993), 67 Ohio St.3d 266, 617 N.E.2d 1068.

To establish a cause of action in negligence, plaintiff must show duty, breach of that duty, and damage or injury as a proximate result of the breach. See, *e.g., Malone v. Miami Univ.* (1993), 89 Ohio App.3d 527, 625 N.E.2d 640; *Abram & Tracy, Inc. v. Smith* (1993), 88 Ohio App.3d 253, 623 N.E.2d 704. The trial court in this case held that the city owed no duty to appellants, as a matter of law. We agree with the trial court.

Ordinarily, the existence of a legal duty in a negligence action is a question of law for the court, and there is no expressed formula for determining whether a duty exists. See *Mussivand v. David* (1989), 45 Ohio St.3d 314, 544 N.E.2d 265; *Malone, supra.* "Legal duty" has been defined as an obligation imposed by law on one person to act for the benefit of another person due to a relationship between them. *Berdyck v. Shinde* (1993), 66 Ohio St.3d 573, 613 N.E.2d 1014.

In appellants' sole assignment of error, appellants contend that the trial court erred in granting summary judgment in favor of the city as to appellants' contribution claim. The trial court held that the city was not a joint tortfeasor, as a matter of law, since it owed no duty to decedent. We agree.

Appellants first contend that the city owed a duty to decedent under rule of law set forth in *Hirschbach v. Cincinnati Gas & Elec. Co.* (1983), 6 Ohio St.3d 206, 6 OBR 259, 452 N.E.2d 326. In that case, the Ohio Supreme Court held in the syllabus:

"One who engages the services of an independent contractor, and who actually participates in the job operation performed by such contractor and thereby fails to eliminate a hazard which he, in the exercise of ordinary care, could have eliminated, can be held responsible for the injury or death of an employee of the independent contractor."

In *Hirschbach,* the court created an exception to the general rule that one who engages an independent contractor to perform an inherently dangerous task is not liable for the injuries sustained by an employee of the independent contractor. *Whitelock v. Gilbane Bldg. Co.* (1993), 66 Ohio St.3d 594, 597, 613 N.E.2d 1032, 1034. In our view, the rule of law set forth in *Hirschbach* is inapplicable herein since decedent, in this case, was employed by the subcontractor of the state of Ohio and not the city. Pettibone and Pasicka were not employees of the contractor on this project. Indeed, appellants concede that the only involvement the city had with this project was subsidizing some of the repaving expenses and

conducting routine inspections. Thus, the relationship between the city and decedent in this case is not the same type of relationship that existed between the parties in *Hirschbach, supra.* Under these undisputed facts, *Hirschbach* does not impose a legal duty upon the city for the protection of decedent.

■ Moreover, in *Bond v. Howard Corp.* (1995), 72 Ohio St.3d 332, 650 N.E.2d 416, the court held that the term "actively participated" means "directed the activity which resulted in the injury and/or gave or denied permission for the critical acts that led to the employee's injury, rather than exercising a general supervisory role." *Id.* at 337, 650 N.E.2d at 420–421. See, also, *Michaels v. Ford Motor Co.* (1995), 72 Ohio St.3d 475, 479, 650 N.E.2d 1352, 1355–1356. In a reply brief filed with this court, appellants acknowledge the lack of any evidence which would permit a finding that the city had the right to control decedent Power's work.

Appellants next contend that a legal duty arises under Restatement of the Law 2d, Torts (1965) 135, Section 323, which provides:

"Negligent Performance of Undertaking to Render Services

"One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of the other's person or things, is subject to liability to the other for physical harm resulting from his failure to exercise reasonable care to perform his undertaking, if

"(a) his failure to exercise such care increases the risk of such harm, or

"(b) the harm is suffered because of the other's reliance upon the undertaking."

Although this Restatement section has not been expressly adopted by the Ohio Supreme Court, it has been cited with approval by the Ohio Supreme Court and several courts of appeals of this state. See, *e.g., Seley v. G.D. Searle & Co.* (1981), 67 Ohio St.2d 192, 202, 21 O.O.3d 121, 127, 423 N.E.2d 831, 839; *Briere v. Lathrop Co.* (1970), 22 Ohio St.2d 166, 172, 51 O.O.2d 232, 235–236, 258 N.E.2d 597, 602; *Wissel v. Ohio High School Athletic Assn.* (1992), 78 Ohio App.3d 529, 605 N.E.2d 458; and *King v. Lindsay* (1993), 87 Ohio App.3d 383, 622 N.E.2d 396.

In *Wissel, supra,* a high school football player who was rendered a quadriplegic when he tackled an opposing player brought suit against the Ohio High School Athletic Association ("OHSAA"), a nonprofit organization engaged in setting safety standards for athletic equipment. The player's negligence action was based in part on the theory that defendant had violated a duty of care arising under Restatement Section 323. The trial court granted summary judgment in favor of defendant as to this theory. The Hamilton County Court of Appeals held

that summary judgment was proper since plaintiff did not present evidence to support a finding of either an increased risk of harm under Section 323(a) or detrimental reliance under Section 323(b). *Id.,* 78 Ohio App.3d at 541, 605 N.E.2d at 465–466.

In *Wissel, supra,* the court of appeals made the following observations about the liability imposed under Section 323(a):

"Cases interpreting Section 323(a) have made clear that the increase in the risk of harm required is not simply that which occurs when a person fails to do something that he or she reasonably should have. Obviously, the risk of harm to the beneficiary of a service is always greater when the service is performed without due care. Rather, as the court stated in *Turbe v. Government of Virgin Islands, Virgin Islands Water & Power Auth.* (C.A.3, 1991), 938 F.2d 427, 432:

" '[Section] 323(a) applies only when the defendant's actions increased the risk of harm to the plaintiff relative to the risk that would have existed had the defendant never provided the services initially. Put another way, the defendant's negligent performance must somehow put the plaintiff in a worse situation than if the defendant had never begun the performance. As we have noted when interpreting § 324A(a), a companion provision to § 323(a), to prevail under a theory of increased risk of harm a plaintiff must "identify sins of commission rather than omission." *Patentas v. United States,* 687 F.2d 707, 716 (3d Cir.1982) * * *.' " *Wissel,* 78 Ohio App.3d at 540, 605 N.E.2d at 465.

■ In this case, appellants seek to impose liability upon the city based solely on Pettibone's failure to skillfully look out for traffic. However, it is clear that Pettibone's failure to faithfully perform this service put decedent in no worse position than he would have been had the services not been provided. In his deposition, Pettibone testified:

"Q. [MR. FLOOD] When you and Mr. Pasicka first met on Spring Street in the morning before coffee, what time did you arrive there?

"A. About 7:30 I imagine.

"Q. Did you see Mr. Power there at that time?

"A. No.

"Q. You immediately left to go get a cup of coffee?

"A. Right.

"Q. What time did you get back to the site?

"A. About 8:00, just long enough to drink a cup of coffee because we wanted to get done as early as we could.

"Q. What did you first do when you got back to the site?

"A.   Well, we run into John down there coming this way.   He was doing his own measuring by himself.   He said he had started at Fourth Street and we talked and told John that we would compare our notes so we both agree on them and no trouble at all."

This undisputed testimony establishes that decedent was ready and willing to perform the work necessary to complete the punch list on his own, without a lookout, and that he had already completed some of the work before the city employees arrived.   Additionally, Keith Power, a Columbus Asphalt representative, confirmed that decedent was the only company employee at the site that day.   Given this undisputed testimony, no reasonable jury could find an increased risk of harm to decedent.   *Wissel, supra.*   See, also, *Great E. Jewelers, Inc. v. Robert E. Haines Ins. Agency* (May 3, 1988), Franklin App. No. 87AP–849, unreported, 1988 WL 44744.

■   Similarly, we do not find this to be a case where plaintiff demonstrated any detrimental reliance upon the voluntary undertaking of the city employees. In *Wissel,* the court noted:

" * * * Courts have generally required that the plaintiff seeking to impose liability under Section 323(b) show actual or affirmative reliance, *i.e.,* reliance 'based on specific actions or representations which cause the persons to forego other alternatives of protecting themselves.'   *Cracraft v. City of St. Louis Park* (Minn.1979), 279 N.W.2d 801, 807;   see, also, *Turbe, supra,* 938 F.2d at 431. * * * " *Wissel,* 78 Ohio App.3d at 541, 605 N.E.2d at 465.

In *Wissel,* the court found no evidence that the plaintiff affirmatively relied on the actions or representations of the defendants.   *Id.* at 541, 605 N.E.2d at 465. The court in *Wissel, supra,* noted that plaintiff had not produced any evidence that he would have chosen to wear a safer helmet or that he would have played or tackled any differently in reliance upon the defendants' actions or representations.   *Id.*   In this case, as was the case in *Wissel,* there is no evidence that decedent abandoned any other available opportunities to protect himself against the risk associated with working in the city's streets in reliance on the gratuitously undertaking of the city employees.   As stated above, the evidence conclusively establishes that decedent was prepared to take the required measurements by himself, without the aid of a lookout and without the aid of any further safety measures.   Consequently, no legal duty on the part of the city arises under Restatement Section 323(b), as a matter of law.

■   Appellants argue, alternatively, that the city breached a duty it owed to Boles by failing to keep its streets free from nuisance as required by R.C. 723.01. Appellants claim that the city created a nuisance by allowing decedent Power to

work on Spring Street without posting signs warning motorists of his presence. We disagree.

Initially, we note that appellants have cited no authority for the proposition that the mere presence of a person in the traveled portion of the roadway constitutes a nuisance. Moreover, it is clear from the evidence in this case that the danger to passing motorists arising from *decedent's* presence in the roadway, if any, was created by decedent and decedent's employer, not the city. Indeed, there is no evidence in this case that the city had any right to control the manner of decedent's work or that the city had assumed any duty of care owed to decedent by his employer. Moreover, Keith Power acknowledged that Columbus Asphalt had an obligation to supply its employees on this project with all safety equipment and signage required by the Manual of Uniform Traffic Control Devices; the required materials were available to decedent on the date of the accident.

In short, given the unchallenged facts of this case, it is evident that the city was not a joint tortfeasor, as a matter of law. Consequently, the trial court did not err by granting summary judgment in favor of the city as to appellants' claim for contribution. See R.C. 2307.31(A). Appellants' sole assignment of error is hereby overruled.

Having overruled appellants' assignment of error, we hereby affirm the judgment of the Franklin County Court of Common Pleas.

*Judgment affirmed.*

DESHLER, J., concurs.

LAZARUS, J., dissents.

LAZARUS, Judge, dissenting.

Because I disagree with the majority's conclusion that the city of Columbus ("appellee") owed no duty to the decedent, I dissent. Appellee's duty to the decedent was the statutory duty to keep the streets free from nuisance, pursuant to R.C. 723.01. The fact that appellee owed no duty to decedent based on their employment relationship does not affect the duty that appellee owed based on R.C. 723.01.

Summary judgment is appropriate only if there is no genuine issue of material fact, the moving party is entitled to judgment as a matter of law, and, construing all evidence in favor of the nonmoving party, reasonable minds could reach only a conclusion in favor of the moving party. *Harless v. Willis Day Warehousing Co.* (1978), 54 Ohio St.2d 64, 66, 8 O.O.3d 73, 74, 375 N.E.2d 46, 47.

The city employee, Pasicka, and the decedent, Power, were working together in the road without taking any safety precautions, such as posting signs warning drivers of their presence. As his employer, appellee is vicariously liable to the extent that Pasicka was negligent. Because the conduct of the other city employee, Pettibone, is irrelevant to my analysis, it may be assumed that Pettibone was not negligent.

At common law, municipalities were immune from liability in the exercise of governmental functions, subject to statutory exceptions. One such exception has been the duty to keep the streets free from nuisance. *Wall v. Cincinnati* (1948), 150 Ohio St. 411, 38 O.O. 289, 83 N.E.2d 389, paragraph one of the syllabus. The principle embodied in R.C. 723.01 has been a part of Ohio law since 1852. *Fankhauser v. Mansfield* (1969), 19 Ohio St.2d 102, 105, 48 O.O.2d 103, 104–105, 249 N.E.2d 789, 790–791. At the time this cause of action accrued, July 20, 1985, R.C. 723.01 read:

"Municipal corporations shall have special power to regulate the use of the streets. *The legislative authority of such municipal corporation* shall have the care, supervision, and control of public highways, streets, avenues, alleys, sidewalks, public grounds, bridges, aqueducts, and viaducts within the municipal corporation, and *shall cause them to be kept open, in repair, and free from nuisance.*" [3] (Emphasis added.)

An R.C. 723.01 claim is a negligence claim. By R.C. 723.01, "the General Assembly imposed a statutory duty and provided a basis for actions against municipalities for negligence concerning highways." *Dickerhoof v. Canton* (1983), 6 Ohio St.3d 128, 129, 6 OBR 186, 187, 451 N.E.2d 1193, 1195; *Vogel v. Wells*

---

**3.** R.C. 723.01 was amended in 1985 and 1989, but neither amendment is relevant to this case. R.C. 2744.02(B)(3), which would otherwise apply in this case, is inapplicable because it became effective November 20, 1985, after this cause of action accrued. See *Williamson v. Pavlovich* (1989), 45 Ohio St.3d 179, 184, 543 N.E.2d 1242, 1247–1248, fn. 4. R.C. 2744.02(B)(3) expressly authorizes tort actions for failure to keep streets free from nuisance:

"Subject to sections 2744.03 and 2744.05 of the Revised Code, a political subdivision is liable in damages in a civil action for injury, death, or loss to persons or property allegedly caused by an act or omission of the political subdivision or of any of its employees in connection with a governmental or proprietary function, as follows:

"* * *

"(3) Except as otherwise provided in section 3746.24 of the Revised Code, political subdivisions are liable for injury, death, or loss to persons or property caused by their failure to keep public roads, highways, streets, avenues, alleys, sidewalks, bridges, aqueduct, viaducts, or public grounds within the political subdivisions open, in repair, and free from nuisance * * *."

The scope of liability under R.C. 723.01 and 2744.02(B)(3) for failing to keep streets open, in repair, and free from nuisance is apparently identical. *Hudson v. Layne* (Oct. 12, 1989), Franklin App. No. 89AP–395, unreported, 1989 WL 119988; *Manufacturer's Natl. Bank of Detroit v. Erie Cty. Rd. Comm.* (1992), 63 Ohio St.3d 318, 321, 587 N.E.2d 819, 822 ("Like R.C. 723.01, R.C. 2744.02[B][3] imposes on political subdivisions a duty of care to keep highways open and safe for public travel.").

(1991), 57 Ohio St.3d 91, 97, 566 N.E.2d 154, 159–160 (citing cases). R.C. 723.01 "provides a general rule of conduct and makes negligence the basis of liability for its violation * * *." *Taylor v. Cincinnati* (1944), 143 Ohio St. 426, 28 O.O. 369, 55 N.E.2d 724, paragraph four of the syllabus.

A negligence claim consists of three elements: duty, breach of duty, and injury proximately resulting from the breach of duty. *Malone v. Miami Univ.* (1993), 89 Ohio App.3d 527, 529, 625 N.E.2d 640, 641–642; *Abram & Tracy, Inc. v. Smith* (1993), 88 Ohio App.3d 253, 261, 623 N.E.2d 704, 709–710. In this case, construing the evidence in favor of appellants, reasonable minds could conclude that appellee breached two duties: the generally applicable duty to exercise reasonable care under the circumstances, and the duty under R.C. 4511.11(A) to adhere to a mandatory standard of the Manual of Uniform Traffic Control Devices ("MUTCD"). Reasonable minds could also conclude that Pasicka's negligence was a proximate cause of Power's injury.

Reasonable minds could conclude that appellee breached its generally applicable duty to exercise reasonable care. The duty of reasonable, or ordinary, care depends on the foreseeability of the injury. *Littleton v. Good Samaritan Hosp. & Health Ctr.* (1988), 39 Ohio St.3d 86, 92, 529 N.E.2d 449, 454–455. Under R.C. 723.01:

"The township has a duty to deep the areas within its control free from nuisance, *i.e.*, conditions that directly jeopardize the safety of traffic on the highway. Where the township fails in its duty, it may be liable for injuries proximately caused by the nuisance." *Manufacturer's Natl. Bank of Detroit v. Erie Cty. Rd. Comm.* (1992), 63 Ohio St.3d 318, 322, 587 N.E.2d 819, 823.

"The relevant focus is on the *effect* of the obstruction on the highway's safety, not on the *nature* of the particular obstruction." *Id.* at 323, 587 N.E.2d at 823–824. The question of whether an alleged impediment constitutes a nuisance (like the question of whether it was the proximate cause of the accident) is a question of fact for the finder of fact. *Id.*

In this case, the impediment was Pasicka himself, appellee's employee working in the road without any warning signs or other safety precautions. Injury to Pasicka under such circumstances was reasonably foreseeable, and because Pasicka and Power were knowingly working jointly, side by side, it must be presumed that injury to Power was equally foreseeable. Because injury to Power was reasonably foreseeable, appellee, through its employee Pasicka, owed a duty to guard against that injury. Pasicka's failure to do so constituted a breach of that duty—negligence.

Ohio courts have reviewed a wide variety of situations involving alleged nuisances under R.C. 723.01 and 2744.02(B)(3).[4] When compared to other impediments that courts have found could be nuisances, thereby creating a jury question, a worker in the road must be considered a potential nuisance, creating a jury question in this case.

The facts of two cases in particular are similar to the facts in this case. In *Marcum v. Adkins* (Mar. 28, 1994), Gallia App. No. 93CA17, unreported, 1994 WL 116233, the court reversed summary judgment for the county, holding that a genuine issue remained as to whether a nuisance was created by a four-person, three-vehicle work crew blocking a lane of traffic without posting required warning signs. And in *Leach v. Dayton* (1994), 98 Ohio App.3d 467, 648 N.E.2d 895, the court reversed a directed verdict for the city, holding that reasonable minds could conclude that a front-end loader blocking a lane of traffic without warning devices constituted a nuisance.

In *Hunter v. Cleveland* (1976), 46 Ohio St.2d 91, 92, 75 O.O.2d 160, 161, 346 N.E.2d 303, 304, the court affirmed a jury verdict for the plaintiff, holding that lanterns and barricades that were habitually removed, leaving excavations unguarded, constituted a nuisance. In *Heath v. Cleveland* (July 14, 1994), Cuyahoga App. No. 65702, unreported, 1994 WL 372369, and *Hamila v. Cleveland* (1993), 91 Ohio App.3d 618, 632 N.E.2d 1388, the courts reversed summary judgment for the city, holding, respectively, that a defective curb and a metal plate in the road could be nuisances giving rise to liability to a pedestrian. In *Howe v. Jackson Twp. Bd. of Trustees* (1990), 67 Ohio App.3d 159, 586 N.E.2d 217, the court reversed the grant of summary judgment, holding that failure to post signs warning of allegedly hazardous loose stone in the road could constitute a nuisance. In *Davis v. McClain* (Nov. 27, 1992), Carroll App. No. 614, unreported, 1992 WL 356163, the court reversed the grant of summary judgment, holding that the county's placement of sand in the middle of a sharp curve in the road without posting warning signs could be a nuisance. In *Scheck v. Licking Cty. Commrs.* (July 18, 1991), Licking App. No. CA–3573, unreported, 1991 WL 148100, the court reversed the grant of summary judgment, holding that a six-foot-wide, four-inch-deep pothole could be a nuisance.

Potential nuisances under R.C. 723.01 include impediments in the right-of-way, even if they are not on the road itself. *Manufacturer's Natl. Bank of Detroit, supra,* 63 Ohio St.3d at 322, 587 N.E.2d at 823. In *Manufacturer's Natl. Bank,* at paragraph one of the syllabus, the court responded to a question certified by the United States Sixth Circuit Court of Appeals by holding that a permanent obstruction to visibility within the roadway right-of-way can be a nuisance. In

---

4. See fn. 1, *supra.*

*Adkins v. Ontario* (1983), 8 Ohio St.3d 45, 8 OBR 406, 457 N.E.2d 317, the court reversed the grant of summary judgment for the village, holding that the condition of a guardrail on a median strip could be a nuisance. In *Dickerhoof,* 6 Ohio St.3d at 131, 6 OBR at 188–189, 451 N.E.2d at 1196, the court reversed a Civ.R. 12 dismissal, holding that failure to keep the shoulder of a highway in repair could be a nuisance.

In *Robert Neff & Sons v. Lancaster* (1970), 21 Ohio St.2d 31, 50 O.O.2d 80, 254 N.E.2d 693, paragraph one of the syllabus, the court held that a nuisance could be a structure or condition above the surface of a street, in this case an overhanging tree limb. Similarly, in *Richards v. Rubicon Mill Condominium Assn.* (1995), 100 Ohio App.3d 264, 268, 653 N.E.2d 751, 754, the court held that an allegation that a diseased tree extended into the air space above the street states a claim for nuisance.

In *Fankhauser,* 19 Ohio St.2d at 109, 48 O.O.2d at 107, 249 N.E.2d at 793, and *Stipanovich v. Applin* (1991), 74 Ohio App.3d 506, 510, 599 N.E.2d 711, 714, the courts reversed judgments on the pleadings in favor of the defendants, holding, respectively, that malfunctioning and poorly timed traffic signals can be nuisances.

The mere misplacement or failure to maintain a sign can be a nuisance. In *Honeywell v. Woodring* (Sept. 4, 1992), Fulton App. No. 91FU000008, unreported, 1992 WL 213100, the court held that a village's misplacement of a stop sign could be a nuisance. In *Franks v. Lopez* (1994), 69 Ohio St.3d 345, 351, 632 N.E.2d 502, 506–507, the court reversed the grant of summary judgment, holding that questions of fact remained as to whether the township breached its duty to keep the road free from nuisance for its alleged failure to maintain a reflectorized sign and its alleged failure to comply with the MUTCD. In *Vogel,* 57 Ohio St.3d at 97, 566 N.E.2d at 159–160, the court affirmed a jury verdict for the plaintiff against the city, holding that foliage obscuring a stop sign could be a nuisance. Similarly, in *Saylor v. Hill* (Oct. 3, 1990), Medina App. No. 1860, unreported, 1990 WL 152894, the court reversed summary judgment for the county, holding that a guardrail obscuring the view of an intersection could be a nuisance.

If a pothole or an overhanging branch can be a nuisance, then certainly reasonable minds could conclude that Pasicka working in the road at the time of the accident was a nuisance. In light of the aforementioned cases, I would hold that a city employee working in the road without taking any safety precautions can constitute a nuisance within the meaning of R.C. 723.01. The remaining question, whether this negligence proximately caused the injury, is a question of fact for a jury.

Appellee's breach of the duty of ordinary care is but one of the two grounds for a finding of negligence. In addition to the breach of the duty of ordinary care,

the evidence, construed in favor of appellants, shows that appellee breached the duty under R.C. 4511.11(A) to adhere to the mandatory standards of the MUTCD. R.C. 4511.11(A) imposes upon local authorities a duty to adhere to regulations for traffic control devices promulgated by the Ohio Department of Transportation:

"Local authorities in their respective jurisdictions shall place and maintain traffic control devices in accordance with the department of transportation manual and specifications for a uniform system of traffic control devices, adopted under section 4511.09 of the Revised Code, upon highways under their jurisdiction as are necessary to indicate and to carry out sections 4511.01 to 4511.76 and 4511.99 of the Revised Code, local traffic ordinances, or to regulate, warn, or guide traffic." R.C. 4511.11(A).

The manual referred to in R.C. 4511.11(A) is the MUTCD. Because appellee is a municipality, and because municipalities are "local authorities," R.C. 4511.01(AA), appellee has a duty to adhere to the MUTCD.

The MUTCD contains three standards: mandatory, advisory, and permissive. These standards are distinguished in the MUTCD by the words "shall," "should," and "may."

"In the Manual sections dealing with the design and application of traffic control devices, the words 'shall', 'should', and 'may' are used to describe specific conditions concerning these devices. To clarify the meanings intended in this Manual by the use of these words, the following definitions apply:

"1. SHALL—A mandatory condition. Where certain requirements in the design or application of the device are described with the 'shall' stipulation, it is mandatory when an installation is made that these requirements be met.

"2. SHOULD—An advisory condition. Where the word 'should' is used, it is considered to be advisable usage, recommended but not mandatory.

"3. MAY—A permissive condition. No requirements for design or application is intended." MUTCD, Section 1D (Rev. 12)." [5] See *Perkins v. Ohio Dept. of Transp.* (1989), 65 Ohio App.3d 487, 491–495, 584 N.E.2d 794, 796–799; *Tiley v. Baltimore & Ohio RR. Co.* (Oct. 20, 1988), Miami App. No. 88–CA–7, unreported, 1988 WL 110314.

Failure by the local authority to adhere to the mandatory standards of the MUTCD constitutes negligence *per se. Gregory v. Ohio Dept. of Transp.* (1995), 107 Ohio App.3d 30, 667 N.E.2d 1009; *Patton v. Cleveland* (1994), 95 Ohio App.3d 21, 29–30, 641 N.E.2d 1126, 1130–1132; *Leskovac v. Ohio Dept. of Transp.* (1990),

---

5. Section 1D, Revision 12, quoted above, was in effect at the time this cause of action accrued, July 20, 1985. The identical language is contained in the current Section 1E, Revision 18.

71 Ohio App.3d 22, 27–28, 593 N.E.2d 9, 12–13; *Perkins,* 65 Ohio App.3d at 491–495, 502, 584 N.E.2d at 796–799, 803–804; *Tiley v. Baltimore & Ohio RR. Co.* (Oct. 20, 1988), Miami App. No. 88–CA–7, unreported, 1988 WL 110314; *Whatley v. Tokheim Corp.* (Jan. 30, 1986), Cuyahoga App. No. 49407, unreported, 1986 WL 1286; see *Marcum v. Adkins, supra; Franks v. Sandusky Twp. Bd. of Trustees* (Mar. 31, 1992), Sandusky App. No. S–91–18, unreported, 1992 WL 66561; *Woods v. Beavercreek* (1989), 62 Ohio App.3d 468, 474, 575 N.E.2d 1219, 1223; *Lumbermens Mut. Cas. Co. v. Ohio Dept. of Transp.* (1988), 49 Ohio App.3d 129, 130, 551 N.E.2d 215, 217–218; *Bartos v. Diasio* (May 16, 1985), Cuyahoga App. No. 49104, unreported, 1985 WL 9000.

Construing the evidence in favor of appellants, reasonable minds could conclude that Pasicka, by working in the street without posting any warning signs, violated the mandatory standard of Section 7D–17:

"The Road Work Ahead sign is intended for use in advance of maintenance or minor reconstruction operation on the roadway.  * * *

"The Road Work Ahead sign shall be placed in advance and on each end of the section where there are construction and maintenance operations."  MUTCD, Section 7D–17 (Rev.12).

This violation of a mandatory standard of the MUTCD constitutes negligence *per se,* that is, breach of duty as a matter of law.

Appellee argues that, even if there was a duty to adhere to the MUTCD, appellants still cannot recover, because that duty was not owed to Power.  I disagree.  The purpose of the MUTCD is to protect everyone:  motorists, pedestrians, and workers.  The "General Provisions" part of the MUTCD was amended effective August 1, 1994, to codify what I presume was always the broad policy behind the MUTCD, promoting public safety generally:

"1A PURPOSE OF TRAFFIC CONTROL DEVICES

"The purpose of traffic control devices and warrants for their use is to help insure highway safety * * *."  MUTCD, Section 1A (Rev.18).

The "Construction and Maintenance Operations" part of the MUTCD expressly states that one of its purposes is to protect those who work in the road:

"*Roadway construction and maintenance operations* disrupt the regular traffic patterns.  They *may be hazardous to the workmen who are constantly exposed to a stream of vehicular traffic* and to motorists who may suddenly be forced into unanticipated situations.  * * *

"The objective of the following treatments are to provide for the safe and expeditious movement of traffic through construction and maintenance zones by doing the following:

"a. Alert the driver.

"b. Tell him what to do.

"c. Guide him thru [*sic* ] or around the project.

"d. *Protect the worker.*" (Emphasis added.) MUTCD, Section 7A–1 (Rev.12); see, also, MUTCD, Section 7A–5(a) (Rev.12) ("[M]aintenance work should be planned and conducted with the safety of the motorist, pedestrian, and worker kept in mind at all times.").

The work that Pasicka and Power were performing jointly was hazardous and exposed them to a constant stream of vehicular traffic. I conclude that the duty imposed on local authorities by R.C. 4511.11(A) to adhere to the mandatory standards of the MUTCD is a duty that runs to all road-maintenance workers, including Power. The evidence, construed in favor of appellants, establishes that appellee violated this duty. Violation of this duty is negligence *per se.*

Reasonable minds could, therefore, conclude that appellee breached two duties: the generally applicable duty to exercise reasonable care under the circumstances, and the duty under R.C. 4511.11(A) to adhere to the mandatory standards of the MUTCD. Therefore, the first two elements of a negligence claim have been established sufficiently to survive summary judgment: appellee owed a duty to Power, and appellee breached that duty. The third element is injury proximately resulting from the breach of duty. See *Hitchens v. Hahn* (1985), 17 Ohio St.3d 212, 214, 17 OBR 447, 448–449, 478 N.E.2d 797, 799.

Appellee argues that, even assuming it breached some duty, that breach was not the proximate cause of the injury. Appellee argues that appellants' failure to assert a claim against it on behalf of their insured, the driver Boles, shows that Boles's negligence was the sole proximate cause of Power's injury. Like the question of whether an impediment constitutes a nuisance, the question of whether that impediment was the proximate cause of an accident is a question of fact for the finder of fact. *Manufacturer's Natl. Bank,* 63 Ohio St.3d at 323, 587 N.E.2d at 823–824. Construing the evidence in favor of appellants, reasonable minds could conclude that Pasicka's failure to take safety precautions was a proximate cause of both Power's and his injuries.

Appellee argues that Pasicka's failure to take safety precautions is irrelevant because Power was required by his employer's contract with the state to provide for the traffic control and safety of his workplace and to place his own safety devices in the street. On the contrary, under Ohio's modified comparative negligence system, it is Power's negligence, not Pasicka's, that is irrelevant on summary judgment, unless Power's negligence constituted more than fifty percent of the total negligence proximately causing his injury. Under R.C. 2315.19(A)(2), if Power's negligence was not more than fifty percent of the total

negligence proximately causing his injury, his negligence is not an absolute bar to recovery; it is merely a factor in the jury's allocation of negligence and liability pursuant to the comparative negligence statute, R.C. 2315.19, and the contribution statute, R.C. 2307.31. Construing the evidence in favor of appellants, reasonable minds could differ on whether Power was more than fifty percent negligent. Therefore, contributory negligence has not been established sufficiently to support the trial court's granting of summary judgment.

Appellee incorrectly argues that Power's assumption of the risk is a total bar to appellants' contribution claim. Because appellee owed Power a duty, Power's assumption of the risk was implied assumption of the risk, which has been merged with contributory negligence under the comparative negligence statute, R.C. 2315.19. See *Jaworowski v. Med. Radiation Consultants* (1991), 71 Ohio App.3d 320, 334–335, 594 N.E.2d 9, 18–19; *Ferguson v. Cincinnati Gas & Elec. Co.* (1990), 69 Ohio App.3d 460, 462–463, 590 N.E.2d 1332, 1333–1334.

The result I would have this court adopt is vexing on its face. Power's negligence was identical to Pasicka's negligence: they both had a responsibility to take safety precautions, neither did, and they worked jointly, side by side, in the middle of the street. The rule of mutual combat says that a person who freely engages in a fight cannot recover damages from his opponent for an intentional tort. There is no analogous rule in the area of negligence. The mutuality of the negligence in this case gives rise to nothing more than a case of comparative negligence and contribution.

One's first impression is that no liability for Power's injury could be based on Pasicka's negligence because presumably Power would have conducted himself the same way that day even if the city employees had not been there. Perhaps it was indeed merely appellee's misfortune that its employees were at the scene where Power would have been jeopardizing his life in any event. But perhaps if Power had been working alone he would have taken the required safety precautions. Such speculation on proximate cause is inappropriate for a court considering a summary judgment motion. The simple facts, construed in appellants' favor, are that (1) Pasicka was negligent in being in the street without posting warning signs or taking other safety precautions; (2) the injury to Power (and, incidentally, to Pasicka) might have been avoided if safety precautions had been taken by Pasicka; and (3) it is for a jury to allocate the negligence among Pasicka, Power, and Boles.

I would, therefore, sustain the assignment of error and reverse the judgment of the Franklin County Court of Common Pleas and remand for further proceedings.