[Cite as *Holcomb v. Holcomb*, 2014-Ohio-3081.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

CLERMONT COUNTY

| | | |
|---|---|---|
| MICHAEL S. HOLCOMB, | : | |
| Plaintiff-Appellant, | : | CASE NO.  CA2013-10-080 |
| | : | O P I N I O N |
| - vs - | | 7/14/2014 |
| | : | |
| THOMAS HOLCOMB, et al., | : | |
| Defendants-Appellees. | : | |

CIVIL APPEAL FROM CLERMONT COUNTY COURT OF COMMON PLEAS
Case No. 2012 CVC 01990

Carl W. Zugelter, 1295 West Ohio Pike, Amelia, Ohio 45102, for plaintiff-appellant

Freund, Freeze & Arnold, Lucinda C. Shirooni, 105 East Fourth Street, Suite 1400, Cincinnati, Ohio 45202, for defendant-appellee, Thomas Holcomb

**RINGLAND, P.J.**

{¶ 1} Plaintiff-appellant, Michael S. Holcomb, appeals from a decision in the Clermont County Court of Common Pleas granting summary judgment to defendant-appellee, Thomas Holcomb. For the reasons outlined below, we affirm the judgment of the trial court.

{¶ 2} Michael was injured when working with his father, Thomas, who was an

independent contractor for Red Bank Transport, Inc. (Red Bank).[1] Thomas owned a truck which he used to pull a trailer owned by Red Bank to haul aggregate. The trailer had a hand-crank system to pull a tarpaulin (tarp) across the top of the trailer used to secure the aggregate. Due to previous shoulder injuries, Thomas was unable to use the hand-crank system. On October 22, 2010, Red Bank granted Michael permission to ride with Thomas in order to "tarp & untarp" the trailer.

{¶ 3} On October 23, 2010, Michael began riding with Thomas. On the first day, Thomas instructed Michael on how to operate the hand-crank system. While Michael had worked as a truck driver in the late 1990's, he had not previously used a hand-crank tarp system. The first day proceeded without incident.

{¶ 4} On October 26, 2010, as they were finishing the last load on the second day, a strong gust of wind caught hold of the tarp while it was unsecured. Thomas and Michael knew this was the last load of the day because of the weather conditions consisting of strong winds and a steady rain. The gust of wind caused the tarp to fall underneath the cap of the truck. Thomas and Michael attempted to loosen the tarp with a shovel to no avail. Thomas then told Michael "you're going to have to get up in the truck and get the tarp out." In response, Michael stated that he did not want to because "[i]t's raining, it's sandy, it's dirty, it smells." Michael stated that "[y]ou go climbing in the inside of the truck, you're wearing that for the rest of the day." Thomas assured Michael that he had "done it a thousand times, it ain't no big deal." In fact, however, the tarp had only fallen under the cap twice in fifteen years. Additionally, Thomas indicated to Michael that the tarp had to be secure before they could leave.

{¶ 5} In his deposition, Michael testified that climbing on the back of the trailer was

---

1. While Red Bank was initially a named party, Michael voluntarily dismissed all claims against Red Bank.

the only way to reach the tarp and that Thomas told him to climb on the side and around to the back of the trailer.  To climb up on the side of the trailer, Michael used the ladder as a hand grip, climbed up on one of the wheels, and stepped onto the aluminum fender, which sloped at a 45-degree angle.  While Michael testified that it did not occur to him that the fender would be slick prior to climbing on the trailer, he testified that in fact the fender was slick. Michael was initially able to maintain his footing.  With his hands on the top edge of the trailer and his feet on the fender, Michael negotiated his way from the side of the trailer to the back of the trailer.  When he reached the back of the trailer with his hands on the top of the tailgate and his feet on the back fender, Michael noticed that the fender was covered in aggregate from a previous load and sloped at a slightly greater angle of approximately 50 degrees.

{¶ 6}  Michael was able to free the tarp from the back of the trailer.  Michael then negotiated his way to the side of the trailer the same way he came.  After reaching the side, when he went to reach for the ladder with his left hand, he lost his grip with his right hand and fell backwards.  Michael landed with the majority of his weight on his right leg and foot and was injured.

{¶ 7}  Thomas knew Red Bank provided mechanics if called.  David Jackson, the operations manager for Red Bank, indicated that mechanics had been dispatched in other instances to fix similar issues.  Curt Foster, the shop foreman, stated that he would have sent a service truck to free the tarp if one had been requested.  Jackson and Foster also indicated that climbing onto the trailer in the manner Michael did was "extremely risky" and "very dangerous."

{¶ 8}  Michael filed a complaint against Thomas.  Michael alleged several causes of action, including that Thomas was negligent under the frequenter statutes and general negligence applied.  Thomas moved for summary judgment.  In granting Thomas' motion for

- 3 -

summary judgment, the trial court found that Michael constituted a frequenter. The trial court found that the truck and trailer constituted Thomas' place of employment and that Michael was a person in a place of employment who was not a trespasser. Consequently, the trial court found that Thomas owed a duty to Michael to keep the premises in a reasonably safe condition. Nevertheless, the trial court found that because the danger was open and obvious, any duty was negated. Additionally, the trial court found that Thomas was not liable to Michael under general negligence principles.

{¶ 9} Michael now appeals and asserts one assignment of error for review.

{¶ 10} THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT.

{¶ 11} Michael argues that the trial court erred in granting Thomas' summary judgment motion for several reasons, three of which relate to duty. First, Michael argues that because he was a frequenter, Thomas owed him a duty to keep the premises in a reasonably safe condition. Michael contends that the open and obvious doctrine does not abrogate the duty Thomas owed to Michael as a frequenter because there is a genuine issue of material fact as to whether the danger was open and obvious in light of statements Thomas made. Additionally, Michael asserts that there is a genuine issue of material fact as to whether attendant circumstances existed. Second, Michael argues that statements made by Thomas instructing him on how to free the tarp constituted active negligence. Third, Michael argues that Thomas assumed a duty to Michael by giving him instructions on how to free the tarp. Finally, Michael argues that a jury question exists as to whether any actions of Thomas leading to him climbing on the side of the trailer were a proximate cause of his injuries.

<u>Standard of Review</u>

{¶ 12} This court's review of a trial court's ruling on a summary judgment motion is de novo. *McQueen v. Kings Island*, 12th Dist. Warren No. CA2011-11-117, 2012-Ohio-3539, ¶ 6. Civ.R. 56 sets forth the summary judgment standard and requires that (1) there be no

genuine issues of material fact to be litigated, (2) the moving party is entitled to judgment as a matter of law, and (3) reasonable minds can come to only one conclusion being adverse to the nonmoving party. *Slowey v. Midland Acres, Inc.*, 12th Dist. Fayette No. CA2007-08-030, 2008-Ohio-3077, ¶ 8. The moving party has the burden of demonstrating that there is no genuine issue of material fact. *Harless v. Willis Day Warehousing Co.*, 54 Ohio St.2d 64, 66 (1978).

{¶ 13} The nonmoving party "may not rest on the mere allegations of his pleading, but his response, by affidavit or as otherwise provided in Civ.R. 56, must set forth specific facts showing the existence of a genuine triable issue." *Mootispaw v. Eckstein*, 76 Ohio St.3d 383, 385 (1996). A dispute of fact can be considered "material" if it affects the outcome of the litigation. *Myers v. Jamar Ents.*, 12th Dist. Clermont No. CA2001-06-056, 2001 WL 1567352,*2 (Dec. 10, 2001). A dispute of fact can be considered "genuine" if it is supported by substantial evidence that exceeds the allegations in the complaint. *Id.*

## Negligence

{¶ 14} In order to avoid summary judgment in a negligence action, the plaintiff must show the following: (1) the defendant owed plaintiff a duty of care; (2) the defendant breached the duty of care; and (3) as a direct and proximate result of defendant's breach, plaintiff was injured. *Barnett v. Beazer Homes Invests., L.L.C.*, 180 Ohio App.3d 272, 2008-Ohio-6756, ¶ 12 (12th Dist.). Ordinarily, the existence of a legal duty in a negligence action is a question of law for the court, and there is no expressed formula for determining whether a duty exists. *Mussivand v. David*, 45 Ohio St.3d 314, 318 (1989). "Legal duty" has been defined as an obligation imposed by law on one person to act for the benefit of another person due to a relationship between them. *Berdyck v. Shinde*, 66 Ohio St.3d 573, 578 (1993).

## Duty to Keep Premises in Safe Condition

{¶ 15} The trial court found that Michael was a frequenter and the truck and trailer constituted a place of employment, which is not disputed on appeal. R.C. 4121.01 defines "frequenter" as "every person, other than an employee, who may go in or be in a place of employment under circumstances which render the person other than a trespasser." R.C. 4121.01; *Wyczalek v. Rowe Constr. Servs. Co.*, 148 Ohio App.3d 328, 335 (6th Dist.). A duty is imposed by R.C. 4101.11 upon an employer to protect employees and frequenters. *Speaks v. Rich Housh Servs, Inc.*, 12th Dist. Warren No. CA95-02-012, 1995 WL 447795, *2 (July 31, 1995). R.C. 4101.12, in turn, imposes on an employer the duty to furnish to employees and frequenters a safe place of employment. *Id.*

Duty Negated by Open and Obvious Doctrine

{¶ 16} The duty owed to frequenters is no more than a codification of the common-law duty owed by an owner or occupier of premises to invitees. *Eicher v. U.S. Steel Corp.*, 32 Ohio St.3d 248, 249 (1987). Such a duty consists of keeping the premises in a reasonably safe condition, and giving a warning of dangers of which he has knowledge. *Id.* Although an owner or occupier owes a duty to its invitees to exercise ordinary care in maintaining its premises, the open and obvious doctrine, when applicable, obviates the duty to warn and acts as a complete bar to any negligence claims. *McQueen v. Kings Island*, 12th Dist. Warren No. CA2011-11-117, 2012-Ohio-3539, ¶ 25, citing *Armstrong v. Best Buy Co., Inc.*, 99 Ohio St.3d 79, 2003-Ohio-2573, ¶ 5. Thus, where there is an open and obvious danger, an owner or occupier "owes no duty of care to individuals lawfully on the premises." *Armstrong* at ¶ 14. The rationale behind this rule is that "the open and obvious nature of the hazard itself serves as a warning." *Armstrong* at ¶ 5. Whether a condition is open and obvious, "the determinative question is whether the condition was discoverable or discernible by one acting with ordinary care under the circumstances." *Vanderbilt v. Pier 27, LLC*, 12th Dist. Butler No. CA2013-02-029, 2013-Ohio-5205, ¶ 12. "Open and obvious hazards are

those hazards that are not concealed and are discoverable by ordinary inspection." *Lykins v. Fun Spot Trampolines*, 12th Dist. Clinton No. CA2006-05-018, 2007-Ohio-1800, ¶ 22.

{¶ 17} Michael argues that reasonable minds could differ as to whether the danger was apparent because of Thomas' statements to Michael implying safety. Michael cites to one Ohio case to support his argument, *Waleszewski v. Angstadt*, 11th Dist. Lake No. 2002-L-113, 2004-Ohio-335. *Waleszewski* involved a real estate transaction where the buyers viewed a home, including the basement, and specifically asked the seller if there were any problems with water seepage. *Waleszewski* at ¶ 21. At the time of the viewings, the basement walls were "covered or visibly limited." *Id.* The seller assured the buyers that there were no problems with water seepage. *Id.* In precluding summary judgment, the Eleventh District found that there was a genuine issue of material fact as to whether the conditions were open and obvious because there was an issue as to whether the sellers intentionally concealed the water seepage problem. *Id.*

{¶ 18} In the case at bar, while Thomas stated he had "done it a thousand times, it ain't no big deal," the condition of the fender was still readily apparent to Michael. The conditions of the trailer were discoverable and discernable. The fender on the side of the trailer angled at 45 degrees. There were strong winds and a heavy rain. Additionally, aggregate was on the fender. Consequently, we find that reasonable minds can only come to one conclusion, that the conditions surrounding Michael's fall were open and obvious.

{¶ 19} Michael also asserts that attendant circumstances were present to negate the open and obvious doctrine. Attendant circumstances are an exception to the open and obvious doctrine. *Williamson v. Geeting*, 12th Dist. Preble No. CA2011-09-011, 2012-Ohio-2849, ¶ 22. The phrase refers to all facts relating to the event, and includes such circumstances as time of day, lack of familiarity with the route taken, and lighting conditions. *Galinari v. Michael Koop*, 12th Dist. Clermont No. CA2006-10-086, 2007-Ohio-4540, ¶ 21.

"An attendant circumstance must divert the attention of the injured party, significantly enhance the danger of the defect, and contribute to the fall." *Williamson* at ¶ 23. "Additionally, an attendant circumstance is one that is beyond the control of the injured party." *Id.*

{¶ 20} Michael states attendant circumstances surrounding the event include Thomas' assurance that it was not a "big deal" to climb on the trailer and that he had done so numerous times before. Additionally, Michael states that Thomas pulling on the tarp while Michael was trying to straighten it constituted an attendant circumstance. We find that these actions did not create attendant circumstances precluding summary judgment. There is no evidence that anything Thomas said to Michael diverted Michael's attention from the danger presented as he was traversing the fender of the trailer. Michael testified that when he initially climbed up on to the fender that it was slick and also testified to the severity of the angle. Anyone engaging in traversing the trailer would have to notice the possible danger as it is an affirmative act to climb up onto the trailer and walk across the fender. With or without Thomas' assurances, traversing the fender of the trailer presented itself as a danger. Additionally, the act of Thomas straightening the tarp did not contribute to Michael's fall because Thomas straightened the tarp when Michael was still on the back of the trailer and Michael fell after he had returned to the side of the trailer. Consequently, we find that there is no genuine issue of material fact regarding whether attendant circumstances existed at the time of Michael's fall.

No Duty Due to Active Negligence

{¶ 21} Michael next asserts that statements made by Thomas instructing him on how to free the tarp constituted active negligence, and thus the open and obvious doctrine does not apply. Premises tort claims where the alleged negligence arises from static or passive conditions, such as preexisting latent defects, are legally distinct from claims arising from

active negligence by act or omission. *Simmons v. Am. Pacific Ent., L.L.C.*, 164 Ohio App.3d 763, 2005-Ohio-6957, ¶ 20 (10th Dist.). This distinction is important because the two claims correspond to separate duties. "[S]tatic conditions relate to the owner's duty to maintain its premises in a reasonably safe condition, including an obligation to warn its invitees of latent or hidden dangers, while * * * active negligence relates to the owner's duty not to injure its invitees by negligent activities conducted on the premises." *Id.*, citing *Perry v. Eastgreen Realty Co.*, 53 Ohio St.2d 51 (1978).

{¶ 22} Thomas telling Michael "you're going to have to get up in the truck and get the tarp out" or any other instruction provided by Thomas did not constitute active negligence. The danger presented of the 45-degree angle of the fender covered in wet aggregate was a static condition immediately observable by Michael despite any instruction provided by Thomas. In fact, Michael stated that "it's raining, it's sandy, it's dirty, it smells." As the trial court stated:

> This is not an instance where Thomas Holcomb removed part of the fender on which Michael was walking while he was on the truck or where Thomas sprayed the truck with water and aggregate as Michael was working on the tarp.

It was not any instruction of Thomas that caused Michael's fall, but rather the condition of the fender itself. Consequently, there is no genuine issue of material fact regarding whether statements made by Thomas constitute active negligence.

No Assumed Duty

{¶ 23} Michael contends that Thomas assumed a duty of care to Michael by specifically instructing Michael on how to negotiate the side of the trailer in order to free the tarp. Michael bases his argument on Restatement of the Law 2d, Torts, Section 323 (1965), entitled "Negligent Performance of Undertaking to Render Services," which states:

> One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for

the protection of the other's person or things, is subject to liability to the other for physical harm resulting from his failure to exercise reasonable care to perform his undertaking, if

(a) his failure to exercise such care increases the risk of such harm, or

(b) the harm is suffered because of the other's reliance upon the undertaking.

{¶ 24} "Cases interpreting Section 323(a) have made clear that the increase in the risk of harm required is not simply that which occurs when a person fails to do something that he or she reasonably should have" because "the risk of harm to the beneficiary of a service is always greater when the service is performed without due care." *Wissel v. Ohio High School Athletic Assn.*, 78 Ohio App.3d 529, 540 (1st Dist.1992). Instead, Section 323(a) "applies only when the defendant's actions increased the risk of harm to the plaintiff relative to the risk that would have existed had the defendant never provided the services initially." *Id.*, citing *Turbe v. Govt. of Virgin Islands*, 938 F.2d 427, 432 (3d Cir.1991). A "defendant's negligent performance must somehow put the plaintiff in a worse situation than if the defendant had never begun the performance." *Wissel* at 529, citing *Turbe* at 432. To prevail, a plaintiff must "identify sins of commission rather than omission." *Wissel* at 529, citing *Turbe* at 432.

{¶ 25} In order to impose liability under Section 323(b), courts have generally required that the plaintiff "show actual or affirmative reliance, i.e., reliance 'based on specific actions or representations which cause the persons to forego other alternatives of protecting themselves.'" *Power v. Boles*, 110 Ohio App.3d 29, 36 (10th Dist.1996), quoting *Cracraft v. City of St. Louis Park*, 279 N.W.2d 801, 807 (Minn.1979).

{¶ 26} In this instance, no services were rendered. Thomas did not provide specifics to Michael on how to navigate the trailer in order to free the tarp. While Thomas told Michael to climb on the side and around to the back of the trailer, Michael stated in his deposition:

Q. Okay. I guess, you explained how you climbed up the ladder and how you made your way around to the back, you reached in.

Was that your decision where to go and how to reach in, or was Tom giving you some go this way and move to the right, move to the left kind of instructions?

A. Well, you just - - you couldn't reach the tarp without being on the back.

Q. So you just went where you had to go to get to the tarp?

A. I guess, yes.

Q. You don't remember him saying anything to you?

A. No, no.

{¶ 27} Even if Thomas had provided specifics to Michael, any statements made by Thomas, including that he had "done it a thousand times, it ain't no big deal," when referring to climbing onto the trailer, in no way placed Michael in a worse situation. Michael admitted that the only way to reach the tarp was from the back of the trailer. Furthermore, Michael did not rely on these statements. When asked whether Michael was concerned about the fender being slick, Michael stated that he was more concerned about getting dirty at the time. He thought he "could get up the ladder, make [his] way around, get it done and be done with it." Consequently, there is no genuine issue of material fact regarding whether Thomas assumed a duty to Michael.

{¶ 28} Because we find that there is no genuine issue of material fact regarding any duty Thomas owed Michael, any argument as to proximate cause is rendered moot. Thomas is entitled to judgment as a matter of law.

{¶ 29} Judgment affirmed.

PIPER and M. POWELL, JJ., concur.