JOURNAL ENTRY and OPINION
Appellant Intercity Yacht Club (IYC) appeals a decision by the trial court in favor of appellee Stanley Boyd in his action for breach of an oral contract. IYC assigns the following error for our review:
 THE TRIAL COURT ABUSED ITS DISCRETION BY DECIDING AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE THAT THE DEFENDANT-APPELLANT BREACHED AN ORAL CONTRACT WITH PLAINTIFF-APPELLEE.
Having reviewed the record and the legal arguments of the parties, we affirm the decision of the trial court. The apposite facts follow.
On March 30, 1998, Stanley Boyd filed a complaint in Cleveland Municipal Court against IYC and Commodore George Blade for breach of contract. In his complaint, Boyd alleged that the defendants failed to timely reinstate him as a member of the Intercity Yacht Club upon his return from a one-year leave of absence. As a result, Boyd alleged, his boat storage contract expired and he was force to incur additional expenses of $2,200[1] to dock his boat elsewhere. Boyd alleged that, at the time of his leave of absence, he had been a member of IYC for ten years. He sought a free 1998 membership in IYC with the return of his ten full years of seniority and damages in the amount of $3,000. Boyd later amended his complaint to add his wife, Venus, as a plaintiff and to limit his claim for relief to monetary damages.
In a journal entry dated March 12, 1999, the magistrate awarded Boyd $1,700 in damages against IYC. The magistrate found that, on April 5, 1997, the Boyds sent a letter to IYC requesting a leave of absence. They also gave copies of the letter to IYC's treasurer, Diane Clinton, and IYC's Commander, Tommie Bell. In late 1997 and early 1998, Boyd contacted IYC about renewing his membership. Though he attended several IYC meetings, he was not allowed to speak. At the March 12, 1998 meeting, Boyd was told to leave because he was not a member. He was also told that his membership would be discussed and they would contact him about it. Boyd gave IYC a $1,300 check for his 1998 dues and dockage charges. Because he had to remove his boat from storage by April 1, 1998, Boyd contacted Commodore George Blade about temporarily docking his boat at IYC while his membership was being considered. Boyd was told he would have to pay $500. Boyd offered to bring the money, then Blade informed his that his membership was not reinstated and he could not return to IYC. The magistrate concluded:
 Based on the Defendant yacht club's own Constitution and By-Laws, the Plaintiffs neither resigned nor were suspended. They merely requested a leave of absence; a request that the Plaintiffs assumed had been granted because it was never denied and other members has (sic) been permitted to take a leave of absence and then return. There is no testimony or evidence that the Plaintiffs resigned their membership. Nor is there any proof that the Plaintiffs were suspended pursuant [to] procedure set forth in the Defendant yacht club's Articles and By-Laws.
 Therefore, the trial magistrate finds that there was an oral agreement between the Plaintiffs and officers of the Defendant yacht club which would have allowed the Plaintiffs to return to active member status. The existence of this oral agreement has been substantiated by Plaintiff's description of his discussion with Mr. Bell, the former commodore of the yacht club, regarding Plaintiff's coming back; the setting by Defendant's officers of certain requirements that the Plaintiffs must performed [sic] prior to being allowed back in the Defendant. * * * Defendant breached the oral agreement to allow Plaintiffs to renew their membership for 1998 by stringing Plaintiffs along past the point at which they could have contracted for comparable dock space from another club at a comparable price.
(Magistrate's decision of 3/9/99 at 7.) The magistrate found in favor of Commodore Blade, finding that he was not personally liable for the plaintiffs' damages because he was acting within the course and scope of his duties as Commodore of IYC.
On March 26, 1999, IYC filed objections to the magistrate's decision, arguing that Boyd left IYC in 1997 after telling several people that he no longer wanted to associate with them. IYC also alleged that it never received a letter from Boyd requesting a leave of absence. IYC also alleged that Boyd was no longer a member of IYC after March 1, 1997 because he had outstanding fees in the amount of $439 from 1996. The fees were not paid until July 1997. IYC alleged that, in 1998, Boyd attended several IYC Board of Trustee meetings and attempted to rejoin IYC but was told to apply to the membership committee for admission in accordance with the IYC By-Laws. However, IYC alleged, Boyd failed to file a written application for membership. IYC also challenges Boyd's damages claim, arguing that the bill he submitted from Old River Yacht Club showed he only paid $900 for 1998 and that Boyd did not answer the question of whether he still owes the remaining balance.
In response to IYC's objections, Boyd alleged that he took a one-year leave of absence in 1997 with the intention to return in January of 1998. He alleged that he communicated his intent to Commodore Tommy Bell and to many other IYC members and officers. Boyd alleged that he never said he did not wish to associate with IYC members. He alleged that he took the leave of absence because, due to ongoing construction at Intercity, he had to walk a long distance to reach where his boat was docked and he was afraid to carry his newborn baby that far. He also alleged that he was changing his boat from salt water to fresh water usage and the mechanic who was working on the boat was located in the Flats area of Cleveland. Boyd alleged that, in 1997, he docked his boat at Channel Park Marina in the Flats at a cost of $3,500. He denied owing IYC any fees and alleged that, in March 1998, he gave a letter to Jim Eaton, head of the membership committee, requesting reinstatement.
In a journal entry dated June 15, 1999, the trial court overruled IYC's objections and upheld the magistrate's decision. This appeal followed.
In its assignment of error, IYC argues the trial court's decision was against the manifest weight of the evidence. In a civil case, judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence. Miller v. Bealer (1992),80 Ohio App.3d 180, 182, 608 N.E.2d 1133, 1134, citing Shear v. W. Am. Ins. Co. (1984), 11 Ohio St.3d 162, 164, 464 N.E.2d 545, 547; Shapiro v. Ohio Atty. Gen. (1999), 132 Ohio App.3d 711, 715, 725 N.E.2d 1232, 1235.
IYC argues that the magistrate improperly based her decision on hearsay testimony from Boyd, which was contradicted by testimony presented by IYC. However, it is well settled that the resolution of conflicting testimony is a matter for the trier of fact. The underlying rationale of giving deference to the findings of the trial court rests with the knowledge that the trial judge is best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony. Rohan v. Mollic (June 1, 1995), Mahoning App. No. 93 C.A. 157, unreported, citing Seasons Coal Co. v. Cleveland (1984), 10 Ohio St.3d 77,80, 461 N.E.2d 1273, 1276. See, also, Abram Tracy, Inc. (1993),88 Ohio App.3d 253, 258, 623 N.E.2d 704.
IYC argues that Boyd was suspended for failure to pay past due financial obligations or that he resigned his membership. IYC argues that Boyd did not comply with IYC By-Laws regarding reinstatement of active membership status. IYC points to testimony by its treasurer Diane Clinton that Boyd was suspended for failure to pay past due financial obligations. The IYC By-Laws required a member who is suspended for non-payment of financial obligations may be readmitted to membership only by application and election as a new member and upon payment of an application fee. IYC argues that Boyd failed to complete an application form in writing, sponsored by two current members as required by the by-laws.
However, the By-Laws required IYC to conduct a hearing before expelling a member for nonpayment of dues. Article VII: Duties and Rights of Members Section 2 provides:
 Any member violating the Constitution, By-Laws, House and Ground Rules, any laws against morality or decency, is guilty of any conduct unbecoming a lady or a gentleman, nonpayment or dues, or for any cause deemed sufficient by the Board of Trustees, may be notified by certified mail to appear before the Grievance Committee or the Board of Trustees, for a hearing on the matter. After a discussion by and upon recommendation by the Board of Trustees, the member may be suspended from all rights and privileges of membership in the Club by said Board of Trustees; provided that before any member be so expelled, he/she shall have the right to a full hearing on such charges which shall be preferred in writing, a copy thereof having been served first on said member at least ten days prior to the hearing.
 Such service shall be by certified mail to the said member's last known address.
The record contains no evidence to support IYC's claim that Boyd was suspended for nonpayment of dues. IYC did not produce certified mail receipts indicating that Boyd was notified of a suspension hearing or that Boyd was served with a copy of the charges against him.
There is also no evidence in the record to support IYC's claim that Boyd resigned his membership. IYC argues that the By-Laws require that two-thirds of the Board of Trustees must approve reinstatement after resignation and that the Board of Trustees voted not to reinstate Boyd's membership. Article VII: Duties and Rights of Members Section 5 provides:
 A member whose resignation has been accepted, desiring to return to membership in the Club, may do so within one year from date of resignation without payment of this [sic] initiation fees upon two-thirds vote of the Board of Trustees, after reconsideration and approval by the Membership committee.
However, there is no evidence to support IYC's claim that Boyd resigned his membership. Article VII: Duties and Rights of Members Section 4 provides:
 Resignations from membership in the Club shall be in writing and shall be sent to the Secretary who shall present same to the Board of Trustees.
Again, IYC failed to produce a copy of Boyd's resignation letter. Under the circumstances, we cannot conclude that the magistrate erred in concluding that Boyd did not resign his membership in IYC.
The issue in this case is whether the parties had an implied agreement that allowed Boyd to take a leave of absence conditioned on Boyd paying outstanding charges and accounts, which amounted to $439. Boyd testified that Diane Clinton told him he could take a leave of absence. He sent a letter to confirm this fact and paid his outstanding accounts. The magistrate accepted Boyd's testimony, the letter, and the check as evidence of this agreement. Resolving the conflicting evidence, the magistrate concluded that an oral agreement existed between the parties.
We recognize the IYC By-Laws do not cover a leave of absence by a member. However, the trial court held and we agree that a binding agreement existed between the parties to return Boyd to active member status. Boyd testified, although contradicted, that he was told to seek the leave of absence by Diane Clinton, Treasurer and Officer-Holder. Boyd had a right to rely on her representation, and she didn't deny the conversation but maintained she did not recall the conversation.
To further support his contention, Boyd testified that Clinton told him she did not receive the letter or the check for the outstanding accounts. Thus, Boyd stopped payment on the check and tendered another check, which the club cashed. The trial court clearly believed Boyd and resolved all of the conflicting evidence in his favor.
Consequently, we hold as a matter of law when some competent, credible evidence exist as to an oral agreement, this court will not reverse the trial court on the argument of manifest weight of the evidence. Additionally, after reviewing this record, we believe the manifest weight of the evidence favored Boyd.
Judgment affirmed.
It is ordered that appellee recover of appellants his costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Cleveland Municipal Court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
KARPINSKI, P.J., and PATTON, J., CONCUR.
 _________________________ PATRICIA ANN BLACKMON JUDGE
[1] Boyd alleged that his Intercity Yacht Club membership would have cost $1,300 for the 1998 season and that the cost of the Yacht Club he was forced to join was $3,500.